## In re BUFFALO NATURAL GAS FUEL CO.

(Circuit Court, N. D. New York. March 13, 1896.)

1. CUSTOMS DUTIES—APPEALS FROM BOARD OF APPRAISERS—FINDINGS OF FACT.
   The decision of the board of appraisers, on evidence produced before it, in respect to a question of fact, such as whether a given substance is or is not a mineral, should not be disturbed by the court, if fairly sustained by the evidence, even if the court were inclined to a different opinion.

2. SAME—CLASSIFICATION—NATURAL GAS.
   Natural gas, brought into this country from Canada through pipes, was exempt from duty as a crude mineral, under paragraph 651 of the act of 1890, and could not be assessed as a nonenumerated unmanufactured article, under section 4.

This was an application by the collector of the port of Buffalo for a review of the decision of the board of general appraisers sustaining

the protest of the importer and holding that the natural gas brought into this country by pipe line under the Niagara river is a crude mineral and, therefore, exempt from duty under paragraph 651 of the act of 1890. The question has twice been before the board and two opinions have been delivered by them which clearly state the facts and the questions in controversy.

The first opinion was delivered July 10, 1891, and is as follows:

"Sharpe, G. A. We find the facts in this case as follows: The Provincial Natural Gas and Fuel Company, of Ontario, Canada, obtain a product of natural gas from the ground by sinking wells therein, which gas is brought from Canada to the city of Buffalo in pipes under the Niagara river, a distance of about twelve miles. It is sold to the appellants in Buffalo, who, in turn, measure it out to and sell it to their customers. Under an opinion of the treasury department (Synopsis, 10,448), the product was assessed for duty by the collector ten per cent. ad valorem under section 4 of the existing tariff. The protest claims that natural gas is free under paragraph 496 as a crude bitumen, or that it is free under paragraph 651 as a crude mineral. At the time of the introduction of this natural gas it was supposed that it could be measured by a meter placed on the American side of the Niagara river, but it is represented to us that practical operations developed the fact that the pressure was about 600 pounds to the square inch, and too great for the endurance of any meter. The collector reports that he was thereupon compelled to resort to the books of the appellants for evidence of the quantity imported, and the bills of the Ontario corporation furnished to the appellants, accompany the entry of the merchandise, showing the number of feet of gas to correspond with the entry, and being approved by the appraiser at Buffalo. The quantity imported was approximately ascertained by the amounts shown to have been burned for the month, as recorded by the several private meters taking the gas from the Buffalo company. By a supplementary report the collector shows that the embarrassment arising from the difficulty of measurement has lately been increased. This natural gas is now furnished for fuel to the city waterworks, and to large manufactories, and no reckoning is kept of the amount consumed, as the contract is made between the parties for an amount of fuel gas sufficient to operate the respective works at a price to be computed by the cost of the coal used during the preceding year. These several consumptions are not measured by meter or otherwise, but a large pipe is run into the furnace of such consumers, and the fuel gas flows in sufficient quantities to fulfill the terms of the contract. The customs officials allege that they are left without data other than the estimates of the company. On this state of things the suggestion is made that the collection of duty upon an article that cannot now be measured, weighed or gauged without depending upon the importer's estimate tends to bring the tariff laws and regulations into disrepute, and that natural gas should be held to be free, and the letter of the department is cited in reference to electricity, transmitted by cable from the Canadian to the American side of the Niagara river to the effect that the same would not be liable to duty. (Synopsis, 10,086.) We cannot sustain the two contentions of the protest that natural gas is free: (1) Because it is a crude bitumen, or (2) because it is a crude mineral. The appellants allege that the introduction of this gas does not affect American industries or interests. If this were legitimate argument for our consideration, we might say that such contention does not seem to be reasonable. Indeed, the papers in the case before us show that it already comes into competition with American gas and coal, and that another company is laying a large main across the Niagara river to connect with the Canadian wells. The papers also reveal the fact that some natural gas is brought to Buffalo from Pennsylvania for consumption, the supply being limited on account of the distance. We are well aware of the fact that this useful agent can only be drawn from the pockets where nature has placed it. This is also true of the precious metals and of the precious stones, and it is not given us to know how soon these repositories may be enlarged, perhaps to so great an extent as to affect existing conditions. Besides, if natural gas can be imported free from the reasons

given in the appellant's argument, why may not gas manufactured from coal subject to duty be claimed to be nondutiable when furnished to consumers by such methods as to make its measurement a matter of difficulty? Nor can we make this difficulty of measurement the ground for holding the article to be free. The method of computation, if not provided for by law, is a method of administration, which intelligent officers will reach under the direction of the department, and for these reasons we hold that natural gas is dutiable at 10 per cent. ad valorem, under section 4 of the existing tariff, as an unmanufactured article not enumerated. The decision of the collector is affirmed."

The matter came again before the board upon a second protest when additional testimony was adduced and new questions of law presented. The opinion was delivered May 20, 1893, and is as follows:

"Wilkinson, G. A. The merchandise is natural gas imported at Buffalo from Canada by mains under the Niagara river, and is used as fuel and for illuminating purposes. It was assessed for duty as a nonenumerated unmanufactured article at 10 per cent. under the act of October 1, 1890, and is claimed to be exempt from duty (1) on the ground that it is not an article within the meaning of the tariff; (2) as crude bitumen under paragraph 496, and (3) as a crude mineral under paragraph 651. In G. A. 744 the board considered and overruled a protest similar to this. But no evidence was introduced in support of the claims, and attention was given chiefly to the first point. We reaffirm the ruling named as to the first and second points, but a lengthy and careful investigation of the subject leads to the conclusion that the third claim in the protest is well founded. The natural gas in question is similar to that produced in Pennsylvania and Ohio, but it was not imported prior to October 1, 1890. Consequently, there are no precedents to serve as guides. Nor does it appear that at or prior to the passage of the present tariff act the dutiable character of natural gas was ever considered in or out of congress. Nor has there ever been any trade or popular designation which would indicate its proper classification for dutiable purposes. It is proper, therefore, to resort to the evidence of scientific experts and to other authorities bearing upon the question. In considering publications it is not believed that the date is of any moment, provided the source is impartial. At the several hearings in New York and in Washington, D. C., the board examined a number of well-known geologists and chemists. While there was conflict in the testimony, the preponderance of the evidence was to the effect that natural gas is a crude mineral. Lexicographers and mineralogists give the word 'mineral,' in its primary and broadest sense, a definition which would embrace natural gas, although their secondary and limited definitions would not. Nothing appears in the tariff, however, to show that congress intended the narrower, and not the broader, meaning. The question has recently been judicially determined in Canada. Section 565 of the municipal act of the dominion empowers a township to lease or sell the right to take minerals under any highway. The town of Gosfield leased this privilege to the Kingsville Gas Company. The Ontario Gas Company asked for an injunction to restrain the sinking of the well, on the ground that natural gas is not a mineral. In his opinion, Judge Street, of the court of common pleas, stated that according to British authorities 'a reservation of minerals includes every substance which can be got from underneath the surface of the earth for the purpose of profit, unless there is something in the context or in the nature of the transaction to induce the court to give a more limited meaning,' and 'it has been laid down that the word "minerals," when used in a legal document or in an act of parliament, must be understood in its widest signification, unless there is something in the context or in the nature of the case to control its meaning. I think myself bound by the authorities to give to the word, when used in this act, its widest signification.' The motion was argued May 31, 1890. Gas Co. v. Smart, 19 Ont. 591. The case was carried to the court of appeals. Chief Justice Haggerty rendered the decision November 10, 1891. He said in part: 'There was hardly any attempt to rebut or dispute the accuracy of scientific nomenclature in describing minerals as solid, liquid, and gas. The objection

urged was that the legislature (especially at the date of the enactment) could not and did not include natural gas under the term "minerals." I cannot see how we can qualify the words used by the legislature when there is nothing in the enactment to explain or limit their ordinary meaning. On full consideration, I have arrived at the opinion that our learned brother could not properly have come to any other conclusion than that natural gas falls within the meaning of minerals in the statute.' 18 Ont. App. 626–632. In the reports of the census, the United States geological survey, and various state authorities, natural gas is enumerated in the list of mineral products and mineral resources. The 'Statistical Abstract of the United States,' prepared by the treasury department, gives on pages 53–55 a table of 'quantities and values of minerals produced in the United States during the calendar years from 1887 to 1891, inclusive.' In this category, under the heading of 'Nonmetallic' on page 54, natural gas is named third in a list of forty, which includes solids and liquids as well as gas. We find that natural gas is a crude mineral, and sustain the claim that it is exempt from duty under paragraph 651, N. T."

The collector appeals from the conclusion reached by the board in its second decision exempting natural gas from duty.

William F. Mackey, Asst. U. S. Atty., for collector.
Herbert P. Bissell, for importer.

COXE, District Judge (after stating the facts as above). The board of general appraisers have considered the question involved with unusual care. It has been argued before them on two occasions. On the second hearing the evidence was so persuasive as to induce them to change their former ruling and hold that the natural gas in question was entitled to enter duty free. The court sees no reason to disturb this decision. Indeed, it is probable that were the issue to be decided here de novo a similar conclusion would be reached. But this is not the question. Even though the court should reach a different conclusion on the facts it would still be its duty to affirm the finding of the board if fairly sustained by the proof. If this were an appeal from a judgment entered upon the verdict of a jury, or the report of a referee in a common-law action, or of a master or commissioner in a chancery or admiralty suit, would the court grant a reversal upon the ground that the finding was against the weight of evidence? This is the question now to be determined and it is thought that it must be answered in the negative. There are many reasons why this rule should apply in these cases. The board is composed of a body of trained experts constantly passing upon questions of fact arising under the tariff laws and having the great advantage of seeing and hearing the witnesses. Their findings upon the facts should not be lightly set aside. The rule was enunciated soon after the board was organized and has been reiterated in a large number of decisions since. It is said that the question whether or not natural gas is a crude mineral depends largely upon expert opinion. This is true of many controversies and especially those under the tariff laws. It is, nevertheless, a question of fact. For the reason already stated it is not thought necessary to discuss the scientific questions so ably presented by the briefs.

Had it been the intention of congress to impose duty upon this volatile, invisible and imponderable product of nature, which is in-

capable of being gauged, measured or entered at the customhouse as are other imported articles, it is difficult to believe that it would have been left to the "catch-all" clause in question. Although the record does not show that natural gas had been imported into this country prior to the act of 1890 it does show that it was well known at that date and had been an article of commerce for years and, of course, might at any time be brought to the United States from Canada or Mexico. Is it not fair to presume that had the lawmakers believed it subject to duty some definite provision would have been made for it in the statute? Even conceding the question to be doubtful the doubt should be resolved in favor of the importer.

The decision of the board should be affirmed.